### RUTH v. HOME OWNERS' LOAN CORPORATION et al.
#### No. 6903.

United States Court of Appeals for the District of Columbia.
Argued May 3, 1937.
Decided June 7, 1937.

Stat. 128, 129, § 4 [12 U.S.C.A. § 1463 and note]). The loan was secured by a deed of trust in which Charles A. Jones, the general manager of defendant corporation, and Paul J. Frizzell, assistant general manager of the corporation, were named as trustees. The loan was for the sum of $8,492.88, with interest at the rate of 5 per cent. per annum, payable in monthly installments of $67.15.

Plaintiff agreed under the terms of the deed of trust to keep the property in repair, carry suitable insurance, and to pay all taxes assessed against it. The deed of trust further provided that from its date until June, 1936, appellant had the option of paying to the corporation the sum of only $35.38 a month, but, in the event he exercised such option, he would then be required to pay the corporation, beginning with June, 1936, a monthly payment of $78.55.

Under the act of Congress creating the corporation it was provided that the maximum amount which might be loaned under the act would be 80 per cent. of the appraised value of the property upon which the loan was made. In his amended bill the plaintiff avers that the appraisal upon which the loan was made was $13,400, 80 per cent. of which was $10,720. It is contended that plaintiff was not required to pay any of the monthly installments, taxes, insurance, or expenses of repair until the amount accrued under the deed of trust would equal $10,720, or 80 per cent. of the appraised value. This contention is totally without merit, since the act clearly provides that 80 per cent. of the appraised value shall be the maximum amount for which a loan may be made. It may be made for any lesser amount, but whatever amount is named in the deed of trust must be paid in accordance with the terms therein specified. There is no option in the act, in the deed of trust, or in equity which would permit nonpayment until the amount accrued under the trust had reached 80 per cent. of the appraised valuation.

Plaintiff prayed in his bill that the corporation be compelled to extend the time for all payments until the total indebtedness reached 80 per cent. of the appraised value; that the trustees be declared disqualified and ineligible as trustees, and be enjoined and restrained from selling the property or from making any deeds or contracts of conveyance or in any manner interfering with the quiet, peaceful posses-

Raymond M. Hudson, of Washington, D. C., for appellant.

Harvey D. Jacob, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

On November 3, 1933, appellant Ruth, plaintiff below, secured a loan from the Home Owners' Loan Corporation, a corporate instrumentality of the United States created by the Act of Congress known as the Home Owners' Loan Act of 1933 (48

sion and enjoyment of the premises by the plaintiff, and that the advertisement and sale thereunder be declared invalid and void.

Defendants filed a motion to dismiss the amended bill on the ground that it did not set forth facts constituting a cause of action either in law or in equity. The court granted the motion, and from the decree entered thereon this appeal was taken.

Without stopping to consider in detail all the points concerning the sale raised by the plaintiff, it is sufficient to say that from the record it clearly appears that the advertisement was duly made and the sale lawfully conducted. It is insisted by defendants that the case has become moot in so far as the contention is made that there could be no default under the loan until it had accrued to 80 per cent. of the appraised value, since plaintiff has paid nothing on the loan either by way of principal, interest, taxes, or insurance. There has already accrued on this loan in the way of monthly payments and taxes an amount greater than 80 per cent. of the appraised value.

■ It is urged that plaintiff is not entitled to be heard in equity, since he has not offered to do equity. No tender of performance of his contractual obligations was made. The mere allegation that the plaintiff has suffered hardships and misfortune does not alter the situation. "Courts of equity are charged with no power of relief against the hardships and misfortunes which sometimes attend upon the prompt and rigid enforcement of debts and obligations which have matured in accordance with contracts whose validity is conceded." Anderson v. White, 2 App.D.C. 408, 416.

It must be remembered that there was no objection interposed by plaintiff at the time the sale was made, and plaintiff is now in the position of a mortgagor seeking redemption of his premises after sale. The rule in respect of such a situation is well stated in Annapolis Co. v. Wardman, 59 App.D.C. 321, 322, 41 F.(2d) 115, 116: "But a further and more important objection is found in the lack of equity contained in this bill. Plaintiff company, having interposed no objection to the sale, is now in a position analogous to that of a mortgagor seeking redemption of the premises after sale under a mortgage. It is an elementary principle of equity that before a

mortgagor, under those circumstances, is entitled to redeem, he must tender payment of the obligation in full, which it was sought to discharge by the foreclosure of the mortgage. Until this is done, the party seeking redemption has no standing in equity."

■ The remaining contention of plaintiff is that the trustees, being officers of the government employed in carrying out the provisions of the Home Loan Act, were disqualified by reason of their connection with the mortgagee. We think this objection is also without merit. The Home Owners' Loan Corporation was not in any sense organized as a commercial enterprise. The money to carry the Home Loan Act into operation was furnished by the government. These trustees, at the time the loan was made, were merely agents of the government to carry out the terms of the act within the District of Columbia. They had personally no financial interest whatever in the transaction, or authority to act except as directed under the provisions of the Manual of Rules and Regulations, which provides, among other things, that the District of Columbia is included in what is known as the Baltimore region, which region includes also the states of Pennsylvania, Maryland, Virginia, and Delaware.

The matter of foreclosures is controlled entirely by the Baltimore regional office. When it appears that a loan is hopelessly in default, the Regional Manager takes control of the situation, and under paragraph 15, chapter VI, the procedure is prescribed as follows:

"The Regional Manager shall see that a representative of the Corporation attends each land sale involving the liquidation of its lien, and that he is duly instructed to bid initially on behalf of the Corporation not less than two-thirds of the unpaid principal and not more than the amount of the total indebtedness plus costs. In cases where the Regional Manager may deem it to be advisable, he may order a pre-sale appraisal."

■ When the matter has been finally determined by the Baltimore office, the local attorney in Washington is ordered to advertise the sale, be present, and make such bids as are necessary to protect the interests of the corporation. His instructions are received from Baltimore, not from Washington. At the time this loan was made, Jones and Frizzell were manager

and assistant manager, respectively, of the District of Columbia agency, and as such were named as trustees in the deed of trust. They in fact knew nothing of these proceedings until the date of the sale, when one of them was present, although the sale was being conducted not by the trustees but by the attorney. The sale would have been equally valid if neither trustee had been present, hence the claim that only one was present and therefore the sale was void is without merit.

It is clear, we think, that under this procedure the trustees had no possible interest except the performance of their duties under the trust, and under the rules and directions imposed by the Regional Office at Baltimore. They were merely the agents selected to carry out the provisions of the act and the regulations properly made thereunder. No objection was interposed by the plaintiff prior to the sale, or at the time of the sale, as to the qualifications of the trustees to act in that capacity; besides, we think that they were clearly qualified.

The decree is affirmed.